IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: **09 - 60235**

STEVEN BRENNER, a resident of the State of New York,

      Plaintiff,

vs.

CHARLES FOX MILLER, a resident of the State of
Florida, and MILLER, SCHWARTZ & MILLER, P.A.,
a Florida professional association,

      Defendants.

_____/

**CIV - HUCK**

MAGISTRATE JUDGE
O'SULLIVAN

FILED by _____ D.C.

FEB 1 3 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff STEVEN BRENNER (the "Plaintiff"), by and through his undersigned counsel,

respectfully files this complaint against CHARLES FOX MILLER and MILLER, SCHWARTZ

& MILLER, P.A. As grounds for their complaint, the Plaintiff states as follows:

## NATURE OF CLAIM

1.    This is an action by which Plaintiff seeks redress for the actions and inactions of

his legal representatives and fiduciaries - his attorneys in an action seeking the dissolution of

Plaintiff's marriage and the division of assets - for their extortion of fees, abandonment of

Plaintiff before the completion of the action, legal malpractice, breach of fiduciary duty and

breach of contract. The conduct of defendants was so egregious that a complaint has been filed

with The Florida Bar, Attorney/Consumer Assistance Program.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 USCA § 1332 in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value $75,000, exclusive of interest and costs.

3.      Venue is proper under 28 USCA § 1391(a)(1) and (2).

## PARTIES

4.      Plaintiff is a citizen of New York State and resides at 211 East 70th Street, New York, New York.

5.      Defendant Charles Fox Miller is a resident of the State of Florida.

6.      Defendant Charles Fox Miller does business in the State of Florida.

7.      Defendant Charles Fox Miller is an attorney admitted to the practice of law in the State of Florida.

8.      Defendant Miller, Schwartz & Miller, P.A. ("MSM") is a Professional Association incorporated under the laws of the State of Florida and doing business in the State of Florida.

9.      Defendant MSM's principal place of business is located in Hollywood, Florida.

10.     At all times relevant herein, defendant Charles Fox Miller was a partner at MSM.

## BACKGROUND

**Plaintiff's Initial Retention of Defendants**

11.     In October of 2005, Plaintiff initiated an action for the dissolution of his marriage ("the divorce action") to Liliana Brenner ("Mrs. Brenner") and Mrs. Brenner thereafter

2

countersued for the same relief. The divorce action was filed in Circuit Court in and for Broward County, Florida.

12.     On January 30, 2007, less than two (2) months before the scheduled trial of the divorce action, Plaintiff's prior counsel withdrew, leaving Plaintiff without representation.

13.     Plaintiff subsequently consulted with Defendants and, on February 13, 2007, Plaintiff signed a document entitled "Authority to Represent and Fee and Cost Agreement" ("the February 13 retainer") by which Plaintiff retained Defendants to represent Plaintiff in the divorce action.

14.     Defendants represented to Plaintiff their expertise in the area of matrimonial law and Plaintiff relied upon such representations in deciding to retain Defendants as his attorneys.

15.     The February 13 retainer provided for Plaintiff's payment of a non-refundable attorney's fee of $33,000.00.

16.     Plaintiff placed his trust and confidence in Defendants to ensure that his interests were fully protected.

17.     Defendants' relationship with Plaintiff was not an ordinary business relationship but was a fiduciary relationship requiring Defendants to exercise a high degree of fidelity and good faith, use their best efforts in their representation of Plaintiff, serve Plaintiff with undivided loyalty, act with openness and conscientious disclosure towards Plaintiff, and honor the trust and confidence placed in them by Plaintiff.

**The Second Retainer**

18.     Within days of Plaintiff's execution of the February 13 retainer, and with no change in the posture and status of the divorce action, Defendants threatened to withdraw from

3

their representation of Plaintiff if Plaintiff did not increase the non-refundable retainer by $17,000.00.

19.     On February 20, 2007, faced with a looming trial date and having little choice in the matter, Plaintiff acceded to defendant Charles Fox Miller's extortionate demand, and signed a second agreement, also entitled "Authority to Represent and Fee and Cost Agreement" ("the February 20 retainer"), by which Plaintiff increased Defendants' non-refundable retainer to $50,000.00.

20.     The February 20 retainer encompassed, and required Defendants to provide services in respect of, all matters and proceedings "with respect to a dissolution of marriage action" and excluded only "appellate proceedings".

21.     The February 20 retainer provided Defendants with the "discretion [to] employ expert witnesses, including, but not limited to… certified public accountants… to assist in preparation and trial of the action…"

**Failure to Retain Forensic Accountant**

22.     At the time of Plaintiff's retention of Defendants as his attorneys, Plaintiff was without a forensic accountant to act in an expert capacity on his behalf in the divorce action.

23.     Defendants were aware that a critical aspect of preparation for the trial of the divorce action was the retention of a forensic accountant to testify on Plaintiff's behalf.

24.     Plaintiff repeatedly requested that Defendants retain a forensic accountant to act on Plaintiff's behalf in the divorce action.

25.     Defendants assured Plaintiff that they would retain a forensic accountant to act on Plaintiff's behalf in the divorce action.

4

26. Defendants did not retain a forensic accountant to act on Plaintiff's behalf in the divorce action.

27. Although Plaintiff's prior counsel had previously retained Norman Kronstadt ("Mr. Kronstadt"), a forensic accountant, to act on Plaintiff's behalf, Mr. Kronstadt withdrew from his representation of Plaintiff on or about December 6, 2006.

**The Mediation**

28. On March 16, 2007, the parties appeared for a mediation.

29. On or prior to March 16, 2007, Defendants contacted Mr. Kronstadt and asked him to act as Plaintiff's forensic accountant at the mediation.

30. At the time that Defendants asked Mr. Kronstadt to act as Plaintiff's forensic accountant for the purposes of the mediation, Plaintiff was involved in a dispute with Mr. Kronstadt over Mr. Kronstadt's prior representation of Plaintiff.

31. At the time that they asked Mr. Kronstadt to appear at the mediation, Defendants were aware of the dispute between Plaintiff and Mr. Kronstadt.

32. On March 16, 2007, at the mediation, Defendants notified Plaintiff for the first time that Mr. Kronstadt would be appearing at the mediation on Plaintiff's behalf.

33. At no time prior to March 16, 2007 did Defendants seek Plaintiff's approval to retain Mr. Kronstadt to act on Plaintiff's behalf at the mediation.

34. At no time prior to March 16, 2007 did Plaintiff approve the retention of Mr. Kronstadt as Plaintiff's forensic accountant for the mediation.

35.     Had Plaintiff been provided with advance notice of Defendants' intention to retain Mr. Kronstadt as Plaintiff's forensic accountant for the purpose of the mediation, Plaintiff would have made arrangements to retain another accountant.

36.     On March 16, 2007, faced with a choice between proceeding at the mediation without the assistance of an accountant, and utilizing Mr. Kronstadt as Plaintiff's accountant, Plaintiff, under duress, approved the retention of Mr. Kronstadt.

37.     Just prior to the commencement of the mediation, Mr. Kronstadt threatened to leave the mediation unless Plaintiff immediately signed a full general release in Mr. Kronstadt's favor.

38.     Mr. Kronstadt also advised Plaintiff that Mr. Kronstadt would not provide Plaintiff with any further services following the mediation and that Mr. Kronstadt would not testify at trial on Plaintiff's behalf.

39.     Faced with a choice between signing the release or proceeding without the services of a forensic accountant at the mediation, Plaintiff acquiesced to Mr. Kronstadt's demand and signed the general release.

40.     Plaintiff signed the general release under duress.

41.     With full knowledge of the circumstances, Defendants breached their duty of loyalty to Plaintiff and assisted Mr. Kronstadt in obtaining the general release.

42.     During the mediation, Mr. Kronstadt revealed that he had been the personal accountant of Mrs. Brenner's matrimonial attorney for over twenty years.

43.     Upon information and belief, Defendants had prior knowledge that Mr. Kronstadt was the personal accountant of Mrs. Brenner's matrimonial attorney.

44.     Defendants failed to make reasonable inquiries to determine whether the retention of Mr. Kronstadt would create a conflict of interest.

45.     Defendants never informed Plaintiff of Mr. Kronstadt's conflict of interest.

46.     Plaintiff had no prior knowledge of Mr. Kronstadt's conflict of interest, to wit, that for over twenty (20) years Mr. Kronstadt had been the personal accountant and fiduciary of Mrs. Brenner's matrimonial attorney.

47.     Mrs. Brenner's matrimonial attorney stated in open court that the only reason that Mr. Kronstadt had participated in the mediation was to obtain the general release from Plaintiff.

48.     The mediation was not successful.

49.     Plaintiff did not participate in the mediation, but was sequestered in a conference room for the entire proceeding.

50.     Defendants never advised Plaintiff of any recommendations made or introduced by the mediator.

51.     Moreover, during the course of the mediation defendant Charles Fox Miller engaged in a vituperative verbal assault upon Plaintiff with the effect of berating, abusing and denigrating Plaintiff and Plaintiff's legal posture in the divorce action.

52.     As a result of this discourse an irreconcilable conflict arose between Plaintiff and Defendants.

53.     Despite this irreconcilable conflict, Defendants continued their representation of Plaintiff.

**The Trial**

54.     The trial of the divorce action was scheduled to commence on the afternoon of March 23, 2007.

55.     Defendants failed to retain a forensic accountant to testify on Plaintiff's behalf at the trial of the divorce action.

56.     Because of Defendants' failure to retain a forensic accountant, Defendants were unprepared to proceed to trial and failed to protect the best interests of Plaintiff.

57.     At approximately 11:00 on the morning of March 23, 2007 Plaintiff appeared at the office of Mrs. Brenner's counsel for what he believed was to be a supplemental deposition before proceeding to trial.

58.     The trial of the divorce action was to commence at 1:30 p.m. of the same day.

59.     Nonetheless, on the morning of March 23, 2007 (the day the trial was to commence), without warning or prior discussion, Defendants presented Plaintiff with a document entitled "Mediated Settlement Agreement" and told Plaintiff to sign the document.

60.     Defendants had not consulted Plaintiff in preparing the Mediated Settlement Agreement and did not obtain Plaintiff's approval of the terms of the Mediated Settlement Agreement.

61.     Although the proposed agreement called for the division of assets, Defendants still had not retained a forensic accountant on Plaintiff's behalf.

62.     Defendant Charles Fox Miller told Plaintiff that the Mediated Settlement Agreement represented a proper allocation of Plaintiff's assets.

63.     Plaintiff began to read the Mediated Settlement Agreement and made handwritten notations regarding items to be changed.

64.     Defendant Charles Fox Miller became irate and ordered Plaintiff to sign the Mediated Settlement Agreement in its original form.

65.     Plaintiff told defendant Charles Fox Miller that Plaintiff had not finished reading the Mediated Settlement Agreement.

66.     Defendant Charles Fox Miller told Plaintiff that there was no time to read the Mediated Settlement Agreement because the parties were going to be late for court.

67.     Defendant Charles Fox Miller insisted that Plaintiff sign the Mediated Settlement Agreement immediately, without providing Plaintiff an opportunity to review the remainder of the document.

68.     Defendant Charles Fox Miller repeatedly represented to Plaintiff that he knew the subject matter of Plaintiff's assets better than Plaintiff did, and that the Mediated Settlement Agreement represented the desired allocation of Plaintiff's assets.

69.     Defendant Charles Fox Miller further represented that the agreement was in proper form to accomplish the intended result.

70.     Under pressure from Defendants, and based on Defendants' represented "expertise" and Defendants' further representations as to the terms and conditions of the Mediated Settlement Agreement, Plaintiff signed the Mediated Settlement Agreement without reading the remainder of the document or any of the attached schedules.

71.     At that point in time, as the trial was only minutes from commencement and Defendants had failed to retain a forensic accountant to act on Plaintiff's behalf, Plaintiff had no choice but to sign the Mediated Settlement Agreement.

72.     Unbeknownst to Plaintiff, the Mediated Settlement Agreement did not include certain tax-related language that Plaintiff's taxation attorney, Robert Panoff, had specifically requested be included in any settlement agreement ("the Panoff language").

73.     Defendants did not inform Plaintiff of Mr. Panoff's request that the Panoff language be incorporated into any settlement agreement.

74.     Plaintiff did not know that Mr. Panoff had requested that the Panoff language be incorporated into any settlement agreement.

75.     Defendants did not inform Plaintiff of the omission of the Panoff language from the Mediated Settlement Agreement.

76.     Had Plaintiff been aware of Defendants' omission of the Panoff language from the Mediated Settlement Agreement, Plaintiff would not have signed the Mediated Settlement Agreement.

77.     Contrary to Defendants' representations, the Mediated Settlement Agreement was fraught with mistakes.

78.     The Mediated Settlement Agreement did not include a 100% allocation to Plaintiff of proceeds he had received (and accumulated interest upon) from life insurance policies on Plaintiff's father's life ("Life Insurance Proceeds").

79.     Defendants owed Plaintiff a fiduciary duty to pursue a 100% allocation of the Life Insurance Proceeds, to wit: they were not marital assets and that Mrs. Brenner was not entitled to any portion of said proceeds.

80.     Following Plaintiff's retention of Defendants, Defendants refused to pursue Plaintiff's claim to the entire Life Insurance Proceeds.

81.     The Mediated Settlement Agreement was incomplete, inaccurate, unclear, impossible to interpret and incapable of being enforced without resort to further litigation.

82.     Attached to the Mediated Settlement Agreement was a document labeled "Schedule A".

83.     Schedule A was an extensive listing of financial data and constituted the bulk of the Mediated Settlement Agreement.

84.     Schedule A was prepared by Mrs. Brenner's accountant, Eric Neuhoff.

85.     In connection with a later proceeding to vacate the Mediated Settlement Agreement, Mr. Neuhoff testified that Mr. Fox Miller did not review the documents that Mr. Neuhoff used to prepare Schedule A.

86.     Upon information and belief, Mr. Fox Miller did not review the documents that Mr. Neuhoff used to prepare Schedule A.

87.     Defendants counseled Plaintiff to sign the Mediated Settlement Agreement in order to cover up the fact that Defendants were unprepared to proceed to trial.

88.     Defendants pressured Plaintiff to sign the Mediated Settlement Agreement to receive a windfall from the non-refundable $50,000.00 fee.

89.  Defendants pressured Plaintiff to sign the Mediated Settlement Agreement to protect the interests of others, and placed the interests of others before Plaintiff's interests.

**Failure to Provide Post-Settlement Representation**

90.  Because the Mediated Settlement Agreement was incapable of being understood, payments that were to be made by Plaintiff to Mrs. Brenner could not be made.

91.  UBS, the fund manager for the marital assets, refused to divide certain of the assets as "required" by the Mediated Settlement Agreement because the Mediated Settlement Agreement did not provide direction as to how the division was to be carried out and the Mediated Settlement Agreement was incapable of being adhered to.

92.  On May 9, 2007, Mrs. Brenner filed a Motion to Compel to enforce her understanding of the meaning of the Mediated Settlement Agreement.

93.  Defendant Charles Fox Miller refused to respond to the Motion to Compel, or perform any further work on Plaintiff's behalf, unless Plaintiff entered into a third retainer agreement providing for Plaintiff's payment of yet another non-refundable retainer.

94.  Plaintiff refused to acquiesce to Defendants' second attempt to extort additional fees.

95.  Because of Defendants' refusal to complete their duties regarding their representation of Plaintiff, Plaintiff was forced to retain alternate counsel.

96.  In response to Mrs. Brenner's Motion to Compel, Plaintiff's new counsel filed a Motion for Relief from Judgment.

97.  On February 14, 2008, a hearing was held to resolve the parties' motions regarding their differing interpretations of the Mediated Settlement Agreement.

98.    Because the Mediated Settlement Agreement was incomplete, inaccurate, unclear, impossible to interpret and incapable of being enforced without resort to further litigation, Plaintiff was forced to retain a forensic accounting firm to provide testimony on his behalf at the February 14, 2008, hearing.

99.    On February 14, 2008, at the hearing, the presiding judge stated of the Mediated Settlement Agreement, "[A]n idiot could look at this settlement agreement and see that there's problems… [T]he agreement isn't clear, it – wasn't written in the text how all this was going to be treated."

100.    Had the Mediated Settlement Agreement been properly drafted and assets properly accounted for, Mrs. Brenner's Motion to Compel, Plaintiff's Motion for Relief from Judgment and the February 14, 2008, hearing would not have been necessary.

101.    Had Defendants not abandoned their representation of Plaintiff, Plaintiff would not have incurred additional fees for the retention of additional counsels and a forensic accounting firm in connection with the post-settlement proceedings.

**The $800.00 "Refund"**

102.    On March 23, 2007 Charles Fox Miller agreed to reimburse Plaintiff $800.00 for a mistake that Charles Fox Miller made in respect of the settlement.

103.    Although defendant Charles Fox Miller sent Plaintiff a check for $800.00, the $800.00 was paid from Plaintiff's own funds, not MSM funds and, as such, was not a refund at all.

104.    MSM improperly retained Plaintiff's $800.00 for its own gain and improperly used client funds for its own expenses.

13

**The Accounting**

105. Following Defendants' abandonment of their representation of Plaintiff, Plaintiff made numerous requests for an accounting of Defendants' time spent working on the divorce action.

106. By letter dated September 17, 2007, Charles Fox Miller refused to provide Plaintiff with the requested accounting.

107. Defendants never provided Plaintiff with the requested accounting.

## COUNT I
## LEGAL MALPRACTICE

108. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

109. As a result of the attorney-client relationship between Plaintiff and Defendants, Defendants owed Plaintiff various duties, including:

> (i)     the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case;

> (ii)    the duty to represent the client and handle the client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity;

> (iii)   the duty of loyalty, including the obligation to fully and fairly disclose any actual or potential conflicts of interest; and

> (iv)    fiduciary duties, including the duty to make full and fair disclosure of material facts.

110. Rather than honor these duties owed to Plaintiff, Defendants breached their duties to Plaintiff by, *inter alia*:

(i)      failing to retain a forensic accountant to testify at trial on Plaintiff's behalf;

(ii)     failing to advise Plaintiff of Mr. Kronstadt's conflict of interest;

(iii)    arranging for Mr. Kronstadt to attend the mediation despite his conflict of interest;

(iv)     failing to disclose Mr. Kronstadt's ulterior motive in attending the mediation;

(v)      failing to withdraw from their representation of Plaintiff as a result of the irreconcilable conflict that arose at the mediation;

(vi)     failing to keep Plaintiff advised with regard to settlement negotiations;

(vii)    preparing the Mediated Settlement Agreement without obtaining Plaintiff's approval;

(viii)   abandoning Plaintiff's claim to the Life Insurance Proceeds;

(ix)     forcing a settlement upon Plaintiff without allowing Plaintiff to fully review the Mediated Settlement Agreement;

(x)      forcing a settlement upon Plaintiff to conceal Defendants' unpreparedness for trial;

(xi)     placing the interests of others before the interests of the Plaintiff;

(xii)    misleading Plaintiff as to the contents of the Mediated Settlement Agreement;

(xiii)   failing to incorporate into the Mediated Settlement Agreement the tax-related language specifically requested by Mr. Panoff;

(xiv)   preparing a Mediated Settlement Agreement that was incomplete, inaccurate, unclear, impossible to interpret and incapable of being enforced without resort to further litigation;

(xv)   failing to provide Plaintiff with the legal services set forth in the retainer agreement;

(xvi)   abandoning their representation of Plaintiff;

(xvii)   failing to pay Plaintiff the $800.00 refund from MSM operating funds;

(xviii)   failing to provide Plaintiff with an accounting of the time that Defendants spent working on the divorce proceedings; and

(xix)   failing to exercise that degree of care, skill, and diligence commonly possessed by a member of the legal community.

111.   By reason of the foregoing, Plaintiff has been damaged in a sum to be determined in accordance with the evidence adduced at trial, but believed to be not less than One Million ($1,000,000.00) dollars.

112.   By reason of Defendants' malpractice they are required to return all compensation for services rendered.

113.   The acts of Defendants constitute a conscious, malicious and intentional disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages in a sum not less than Five Million ($5,000,000.00) Dollars not only to punish Defendants for their indifference to Plaintiff's rights, but to deter Defendants and others from engaging in similar conduct.

**WHEREFORE**, the Plaintiff respectfully requests that the Court take jurisdiction of this Count I and render judgment against the Defendants, jointly and severally, in his favor in an

amount to be determined at trial but not less than One Million ($1,000,000.00) dollars in compensatory damages and Five Million ($5,000,000.00) dollars in punitive damages, award them interest and costs and such other relief as the Court deems just and equitable.

## COUNT II
## BREACH OF FIDUCIARY DUTY

114.    Plaintiff repeats and realleges each of the above allegations set forth above as if set forth fully herein.

115.    As a result of the fiduciary relationship between Plaintiff and Defendants, and the great deal of trust and confidence reposed in Defendants by Plaintiff, Defendants owed Plaintiff certain fiduciary duties, including a duty to act with the utmost degree of honesty, forthrightness, loyalty and fidelity.

116.    Defendants breached their fiduciary duty to Plaintiff by, *inter alia*:

    (i)      failing to advise Plaintiff of Mr. Kronstadt's conflict of interest;

    (ii)     arranging for Mr. Kronstadt to attend the mediation despite his conflict of interest;

    (iii)    failing to disclose Mr. Kronstadt's ulterior motive in attending the mediation;

    (iv)    failing to withdraw from their representation of Plaintiff as a result of the irreconcilable conflict that arose at the mediation;

    (v)     failing to keep Plaintiff advised with regard to settlement negotiations;

    (vi)    preparing the Mediated Settlement Agreement without obtaining Plaintiff's approval;

    (vii)   abandoning Plaintiff's claim to the Life Insurance Proceeds;

(viii)   forcing a settlement upon Plaintiff without allowing Plaintiff to fully review the Mediated Settlement Agreement;

(ix)   forcing a settlement upon Plaintiff to conceal Defendants' unpreparedness for trial;

(x)   placing the interests of others before the interests of the Plaintiff;

(xi)   misleading Plaintiff as to the contents of the Mediated Settlement Agreement;

(xii)   abandoning their representation of Plaintiff;

(xiii)   failing to pay Plaintiff the $800.00 refund from MSM operating funds;

(xiv)   failing to provide Plaintiff with an accounting of the time that Defendants spent working on the divorce proceedings; and

(xv)   failing to exercise that degree of care, skill, and diligence commonly possessed by a member of the legal community.

117.   By reason of the foregoing, Plaintiff has been damaged in a sum to be determined in accordance with the evidence adduced at trial, but believed to be not less than One Million ($1,000,000.00) dollars.

118.   In addition, by reason of Defendants being faithless fiduciaries they are required to return all compensation for services rendered.

119.   The acts of Defendants constitute a conscious, malicious and intentional disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages in a sum not less than Five Million ($5,000,000.00) Dollars not only to punish Defendants for their indifference to Plaintiff's rights, but to deter Defendants and others from engaging in similar conduct.

**WHEREFORE**, the Plaintiff respectfully requests that the Court take jurisdiction of this Count II and render judgment against the Defendants, jointly and severally, in his favor in an amount to be determined at trial but not less than One Million ($1,000,000.00) dollars in compensatory damages and Five Million ($5,000,000.00) dollars in punitive damages, award them interest and costs and such other relief as the Court deems just and equitable.

## COUNT III.
## BREACH OF CONTRACT

120.   Plaintiff repeats and realleges each of the above allegations set forth above as if set forth fully herein.

121.   Defendants expressly and impliedly represented to Plaintiff that they would represent Plaintiff in connection with all proceedings in connection with the divorce action other than appellate work, that they had the skill necessary to represent Plaintiff, that they would exercise that degree of care, skill, and diligence commonly possessed by a member of the legal community, and that they would represent Plaintiff with honesty, forthrightness, loyalty and fidelity to Plaintiff.

122.   Defendants breached their contractual duties to Plaintiff by:

    (i)     failing to retain a forensic accountant to testify at trial on Plaintiff's behalf;

    (ii)    failing to advise Plaintiff of Mr. Kronstadt's conflict of interest;

    (iii)   arranging for Mr. Kronstadt to attend the mediation despite his conflict of interest;

(iv)   failing to disclose Mr. Kronstadt's ulterior motive in attending the mediation;

(v)   failing to withdraw from their representation of Plaintiff as a result of the irreconcilable conflict that arose at the mediation;

(vi)   failing to keep Plaintiff advised with regard to settlement negotiations;

(vii)   preparing the Mediated Settlement Agreement without obtaining Plaintiff's approval;

(viii)   abandoning Plaintiff's claim to the Life Insurance Proceeds;

(ix)   forcing a settlement upon Plaintiff without allowing Plaintiff to fully review the Mediated Settlement Agreement;

(x)   forcing a settlement upon Plaintiff to conceal Defendants' unpreparedness for trial;

(xi)   placing the interests of others before the interests of the Plaintiff;

(xii)   misleading Plaintiff as to the contents of the Mediated Settlement Agreement;

(xiii)   failing to incorporate into the Mediated Settlement Agreement the tax-related language specifically requested by Mr. Panoff;

(xiv)   preparing a Mediated Settlement Agreement that was incomplete, inaccurate, unclear, impossible to interpret and incapable of being enforced without resort to further litigation.

(xv)   failing to provide Plaintiff with the legal services set forth in the retainer agreement;

(xvi)    abandoning their representation of Plaintiff;

(xvii)   failing to pay Plaintiff the $800.00 refund from MSM operating funds;

(xviii)  failing to provide Plaintiff with an accounting of the time that Defendants spent working on the divorce proceedings; and

(xix)    failing to exercise that degree of care, skill, and diligence commonly possessed by a member of the legal community.

123.    By reason of the foregoing, Plaintiff has been damaged in a sum to be determined in accordance with the evidence adduced at trial, but believed to be not less than One Million ($1,000,000.00) dollars.

**WHEREFORE**, the Plaintiff respectfully requests that the Court take jurisdiction of this Count III and render judgment against the Defendants, jointly and severally, in his favor in an amount to be determined at trial but not less than One Million ($1,000,000.00) dollars in damages, award them interest and costs and such other relief as the Court deems just and equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

The Plaintiff, pursuant to Rule 38 of the Federal Rules of Civil procedure, hereby demands trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

OF COUNSEL:

Alan G. Katz

(motion for admission *pro hac vice* to be filed)

(New York State Bar No. 1832690)

Saretsky Katz Dranoff & Glass, L.L.P.

Counsel for Plaintiff Steven Brenner

475 Park Avenue South

New York, New York 10016

Telephone No.: (212) 973-9797

Facsimile No.:   (212) 973-0939

E-mail: akatz@skdglaw.com

**BURSTEIN & ASSOCIATES, P.A.**

Counsel for Plaintiff Steven Brenner

12000 Biscayne Blvd., Ste. 508

Miami, Florida 33181

Telephone No.: (305) 981-9033

Facsimile No.:   (305) 981-9034

E-mail: bburstein@bursteinpa.com

By: _____

Bernardo Burstein

Fla. Bar No. 972207

# CIVIL COVER SHEET

.⅍ JS 44   (Rev. 2/08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**09 - 60235**

## I. (a) PLAINTIFFS

STEVEN BRENNER, a resident of New York state,

**(b)** County of Residence of First Listed Plaintiff   New York County
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Bernardo Burstein, Esq.
Burstein & Associates, P.A.
12000 Biscayne Blvd., Ste. 508
Miami, Florida 33181

**DEFENDANTS**

CHARLES FOX MILLER, a resident of Florida state, and MILLER, SCHWARTZ & MILLER, P.A., a Florida corporation.

County of Residence of First Listed Defendant   Broward County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT

**CIV - HUCK**

**MAGISTRATE JUDGE O'SULLIVAN**

FILED by ___ ATS ___ D.C.

FEB 13 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

(d) Check County Where Action Arose:  ☐ MIAMI- DADE   ☐ MONROE   ☑ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE ☐ HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|
| | (For Diversity Cases Only) and One Box for Defendant |

☐ 1  U.S. Government       ☐ 3  Federal Question
      Plaintiff                   (U.S. Government Not a Party)

☐ 2  U.S. Government       ☑ 4  Diversity
      Defendant                 (Indicate Citizenship of Parties in Item III)

**09 - 60235 - Huck / O'Sullivan**

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization | | |
| | Employment | ☐ 550 Civil Rights | Application | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien | | Statutes |
| | Other | | Detainee | | |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

| V. ORIGIN (Place an "X" in One Box Only) | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Re-filed- (see VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):   a) Re-filed Case ☐ YES ☐ NO      b) Related Cases ☐ YES ☐ NO

JUDGE                                   DOCKET NUMBER

**VII. CAUSE OF ACTION**   Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

This is an action for common law claims of professional breach of contract, breach of fiduciary duties, professional malpractice. etc.

LENGTH OF TRIAL via  5  days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:  ☑ Yes   ☐ No |
|---|---|---|---|

ABOVE INFORMATION IS TRUE & CORRECT TO
THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
_Fla. Bar do. 99 2207_

DATE
February 11, 2009

FOR OFFICE USE ONLY

AMOUNT  350-     RECEIPT #  995216  IFP